# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| DAVID BOY FULLER, | ) |
| | ) |
| Plaintiff , | ) |
| | ) |
| v. | ) Case No. 4:12-cv-03957-CLS-TMP |
| | ) |
| NURSE WHEAT, et al., | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

David Boy Fuller, hereinafter referred to as "plaintiff," has filed a *pro se* amended complaint pursuant to 42 U.S.C. § 1983 alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged. Plaintiff is currently incarcerated at St. Clair Correctional Facility in Springville, Alabama. Plaintiff names the following individuals and entities as defendants: Dr. David Pavlakovic, Director of Nursing Wheat, Nurse Jennifer Webb, Nurse Kelly Phillips, Nurse Shankle, Nurse Butler, Nurse Susan Boatwright, Nurse Battle, Nurse Marcano, Nurse Kleener, Nurse Jennifer Russell, Nurse Henry, Corizon, Inc., Correctional Officers Carl Sanders, Jason McDowell, Kenneth Heflin, Douglas Zuspan, Chanetta Massey, Richard Bell, Andres Marcano, Gregory Hamer, and Billy Cornelison, Business Manager Lisa Tucker, St. Clair Correctional Facility, and the

Alabama Department of Corrections. Plaintiff seeks monetary, declaratory, and and injunctive relief. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 804, 110 Stat. 1321, and 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against officers or employees of governmental entities and to dismiss the complaint or any portion of the complaint that it finds frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Thus, under § 1915A, the court may *sua sponte* dismiss a prisoner's complaint prior to service. Nevertheless, in order to protect a *pro se* prisoner's right of access to the courts, these complaints are read by less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984); *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976).

## FACTUAL ALLEGATIONS

On October 28, 2012, at approximately 4:15 p.m., Nurse Jennifer Russell wrote a false disciplinary against plaintiff, alleging that he was being argumentative and

disruptive during diabetic pill call. (Doc. 16 at 3.) Officer Gregory Hamer and Nurse Russell told plaintiff that he was not a diabetic patient and refused to allow him to check his blood sugar and take his medication. *Id*. Plaintiff alleges that Russell had been served with plaintiff's lawsuit against her two days prior and that Russell retaliated against plaintiff by falsely charging him with an infraction. *Id*.

On November 22, 2012, plaintiff was having chest pains and he had a burning sensation in his right foot. *Id*. Nurses Battle, Russell, and Jennifer Webb refused to provide medical treatment to plaintiff. *Id*. The next morning, Nurse Davis made arrangements for plaintiff to be transported by ambulance to Brookwood Hospital where he was treated. *Id*.

On December 10, 2012, Dr. Pavlakovic and Nurses Webb, Kelly Phillips, and Wheat, Director of Nursing, along with Officer Hamer, denied plaintiff his prescription medications for diabetes and high blood pressure. (Doc. 16 at 4.) Plaintiff alleges that defendants denied him the medications in retaliation for plaintiff's multiple complaints against Corizin, Inc. and its employees. *Id*.

On December 17, 2012, Nurse Shankle refused to allow plaintiff to check his blood sugar. *Id*. Dr. Pavlakovic informed plaintiff that he was not diabetic and that the nurses where "just playing with his mind." *Id*. Nurses Wheat, Boatwright, and Phillips did not intervene to correct Dr. Pavlakovic that plaintiff is diabetic. *Id*.

Instead, they refused to give plaintiff his diabetic medication in retaliation for his lawsuits against them. *Id*.

On January 18, 2013, plaintiff slipped and fell on the stairs in the P-1 Unit and injured his left arm. (Doc. 16 at 4.) Dr. Pavlakovic sent plaintiff to Brookwood Hospital. *Id*. Plaintiff was examined and diagnosed with a severe bruise and treated with an arm sling. *Id*. He was also prescribed pain medication. *Id*. Nurses Phillips and Webb, with the approval of Nurse Wheat, informed plaintiff that the prison did not administer that type of pain medication to inmates. *Id*. at 5. Plaintiff claims he was in severe pain for ten (10) days without pain medication of any kind. *Id*. Plaintiff signed up for sick call and complained of pain. (Doc. 16 at 5.) Dr. Pavlakovic informed plaintiff that he would not undergo an MRI, as recommended by medical staff at Brookwood Hospital, because it was too expensive. *Id*. Dr. Pavlakovic then told plaintiff to "'quit crying like a baby.'" *Id*.

On January 29, 2013, Correctional Officer Chanetta Massey directed Nurse Calvin not to give plaintiff his prescribed medication and to write in the medical record that plaintiff refused his medication. (Doc. 16 at 4.) Nurse Calvin complied. *Id*. Plaintiff informed Correctional Supervisor Carl Sanders of Massey's conduct but both Sanders and Sergeant Jason McDowell refused to tell Nurse Calvin and Officer

Massey to give him his medications. *Id*. Plaintiff did not receive the medication for that day. *Id*.

Plaintiff experienced pain and decreased movements in his left arm and began seeing spots. (Doc. 16 at 5.) Plaintiff claims that these are his common warning signs of high blood pressure. *Id*. At approximately 4:30 p.m., plaintiff went to the infirmary. *Id*. Nurse Butler took plaintiff's blood pressure but lied about the reading and deliberately recorded it as being lower than it was. *Id*. Plaintiff then asked Nurse Battle to recheck his blood pressure. *Id*. Plaintiff claims that Nurse Battle also lied about his blood pressure reading and stated that Nurse Butler's reading was correct, although plaintiff could plainly see that it was not. *Id*.

About 12:30 a.m., plaintiff was still suffering from "high blood pressure symptoms" and notified Correctional Officer Goodwin that he needed to return to the infirmary. (Doc. 16 at 5.) Goodwin telephoned Correctional Officer Richard Bell who was working in the infirmary. *Id*. Bell refused to let Goodwin speak with one of the nurses on duty. *Id*.

After a shift change the next morning, around 7:00 a.m., Correctional Officer Howard sent plaintiff to the infirmary where Nurse Phillips took plaintiff's blood pressure. *Id*. Plaintiff's blood pressure was 170/118 and Nurse Phillips gave plaintiff

blood pressure medication and told him to rest in the infirmary until his blood pressure returned to normal. *Id*.

Around lunchtime, plaintiff returned to the infirmary to get his regularly scheduled medication. *Id*. Officer Massey told Nurses Kleener and Susan Boatwright not to give plaintiff his medication because plaintiff insisted on drinking water directly from the fountain. (Doc. 16 at 6.)

On January 31, 2013, around 4:30 a.m., plaintiff went to pill call. *Id*. He advised Nurse Butler that she would be "receiving legal process" for lying about plaintiff's blood pressure two days earlier. *Id*. Correctional Officer Douglas Zuspan overheard plaintiff and told him, "'Fuck your blood pressure and fuck your lawsuits[.] Tell them I called you a bitch.'" *Id*. Officer Zuspan then pulled out his pepper spray and threatened to spray plaintiff. *Id*.

On February 2, 2013, Officer Massey ordered plaintiff to swallow his medications, which consisted of seven (7) tablets, without water. *Id*. Because plaintiff could not swallow the pills without choking, he went to the water fountain and drank water. (Doc. 16 at 6.) Officer Massey wrote a disciplinary report against plaintiff for disobeying an order. *Id*. Plaintiff claims Massey did this in retaliation for plaintiff's lawsuits against her. (Doc. 16. at 6.)

On February 7, 2013, Nurse Shankle forged plaintiff's signature on a co-pay charge sheet for coming to the infirmary to have his blood pressure checked. *Id*. Plaintiff wrote Business Manager Lisa Tucker and requested that she not take any money from his prison account for payment of any medical co-pay. *Id*. at 6-7. Tucker failed to respond to plaintiff and deducted the co-pay from plaintiff's account without his consent. *Id*. at 7.

On February 14, 2013, plaintiff went to the infirmary for chronic care and to consult with Nurse Thomas about his feet. *Id*. Officer Andres Marcano refused to allow plaintiff to visit chronic care or speak with Nurse Thomas. (Doc. 16 at 7.) When plaintiff objected, Officer Marcano wrote a false disciplinary report against plaintiff. *Id*. Plaintiff was not allowed to attend his scheduled appointments. *Id*. Plaintiff contends that Sergeant Heflin directed Marcano to write the disciplinary report against plaintiff to punish him for writing and filing grievances and lawsuits against nurses employed by Corizon, Inc. and prison employees. *Id*.

## DISCUSSION

**A.    Alabama Department of Corrections & St. Clair Correctional Facility.**

Plaintiff names the Alabama Department of Corrections and the St. Clair Correctional Facility as defendants. However, it is well settled that the Eleventh

Amendment to the United States Constitution bars § 1983 claims in federal court against the state or an agency of the state. *Alabama v. Pugh*, 438 U.S. 781 (1978); *see also Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). As the Supreme Court has stated:

> [T]here can be no doubt . . . that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit. *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292 (1937). Respondents do not contend that Alabama has consented to this suit, and it appears that no consent could be given under Art. I, sec. 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity."

*Alabama v. Pugh*, 438 U.S. at 782. Accordingly, plaintiff cannot maintain a § 1983 action against the Alabama Department of Corrections and the St. Clair Correctional Facility and his claims against these defendants are due to be dismissed.

**B.    Sovereign Immunity.**

To the extent plaintiff's constitutional claims are brought against the individual defendants in their official capacities for monetary relief, plaintiff's claims are due to be dismissed under the doctrine of sovereign immunity. It is well established that the Eleventh Amendment to the United States Constitution bars 42 U.S.C. § 1983 claims against the state or an agency of the state. *See Pennhurst State Sch. & Hosp.*

*v. Halderman*, 465 U.S. 89, 100 (1984). Likewise, lawsuits against a state official in his or her official capacity are suits against the state when "the state is the real, substantial party in interest." *Id*. at 101. Although Eleventh Amendment immunity protects state officials from suits for money damages, actions against a state official for prospective injunctive relief are outside the protection offered by the Eleventh Amendment. *Id*. at 102-03; *see Carr v. City of Florence*, 916 F.2d 1521, 1524 n.2 ( 11th Cir. 1990).

Based on the foregoing, plaintiff's claims against the defendants, in their official capacities for monetary relief, are due to be dismissed. The remainder of this report and recommendation will address plaintiff's claims against defendants in their individual capacities.

## C.   Nurse Marcano, Nurse Henry, & Correctional Officer Billy Cornelison.

Plaintiff names Nurse Marcano, Nurse Henry, and Correctional Officer Billy Cornelison as defendants but fails to state any cognizable claim against them. Specifically, while these individuals are named as defendants in the caption of plaintiff's final amended complaint, they are not mentioned in the body of it.[1] Vague,

---

[1] On January 14, 2013, plaintiff filed a motion to supplement his original pleadings in which he alleged that Nurse Henry denied him proper medical care on January 7, 2013. (Doc. 12 at 1.) He also alleged that Officer Cornelison denied him his prescription medication on January 8, 2013. *Id*. at 1-2. On February 25, 2013, the court ordered plaintiff to file a final amended complaint. (Doc. 15.) The court advised plaintiff that the final amended complaint must include all of plaintiff's claims and should not refer back to previous complaints. *Id*. Additionally, plaintiff was informed that the court would consider only the claims set forth in the final amended complaint. *Id*.

general or conclusory allegations are insufficient to merit relief under 42 U.S.C. § 1983, much less a complete lack of any allegation. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Therefore, Defendants Marcano, Henry, and Cornelison are due to be dismissed.

**D.     Corizon, Inc.**

To the extent plaintiff seeks to state a claim against Corizon, Inc. based on the conduct of its employees, such claim is due to be dismissed. Plaintiff cannot state a claim for relief against a corporation based on the actions of its employees. Specifically, while a corporation providing prison medical services may be liable under § 1983 if it is established that the constitutional violation was the result of the corporation's policy or custom, such a corporation may not be held liable under § 1983 on the basis of respondeat superior. *See Buckner v. Toro*, 116 F.3d 450 (11th Cir. 1986); *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658 (1978). Instead, a plaintiff must allege that the corporation has a policy, practice, or custom that represents official policy that resulted in the alleged discouragement, delay or denial of medical treatment to inmates so as to deny plaintiff his constitutional rights. *See Berdin v. Duggan*, 701 F.2d 909, 914 (11th Cir. 1983). Additionally, a plaintiff must plead more than a blanket assertion that a policy or practice existed; he must specifically identify which policy or practice, if any, caused his injuries. *See Wayne v. Jarvis*, 197

F.3d 1098, 1105 (11th Cir. 1999). Furthermore, the Eleventh Circuit has stated that "[t]o establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Id*. The Eleventh Circuit has defined "custom" to mean "a practice that is so settled and permanent that it takes on the force of law." *Wayne*, 197 F.3d at 1105.

Plaintiff fails to allege in his complaint that any policy or custom of Corizon, Inc. contributed in any way to the claimed constitutional violations. Therefore, plaintiff's Eighth Amendment medical care claim against Corizon, Inc. is due to be dismissed for failing to state a claim upon which relief may be granted.

E.  **Lisa Tucker, Business Manager.**

Plaintiff alleges that Nurse Shankle forged his signature on a co-pay charge sheet. He wrote Business Manager Lisa Tucker, requesting that she not deduct the money from his prisoner account for the co-pay but Tucker deducted the money anyway.

Even assuming that Lisa Tucker intentionally deprived plaintiff of the money in his prisoner account by deducting an unauthorized co-payment, the United States Supreme Court has held that "an unauthorized, intentional deprivation of property by a state employee does not constitute a violation of the due process requirements of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is

available." *Hudson v. Palmer*, 468 U.S. 517, 532-33 (1984). Post-deprivation remedies that satisfy due process are administrative procedures or ordinary tort litigation procedures. *See Parratt v. Taylor*, 541 U.S. 527, 543-44 (1981), *rev'd on other grounds by Daniel v. Williams*, 474 U.S. 327 (1986). The question then becomes whether plaintiff had either procedure available to him. *See Hudson*, 468 U.S. at 535-36.

The State of Alabama, through its Board of Adjustment, provides a meaningful post-deprivation remedy for plaintiff to seek redress for Tucker's allegedly improper withdrawal from his prisoner account. *See* Ala. Code § 41-9-6, *et seq*. (1982). Furthermore, the post-deprivation remedies available to plaintiff under Alabama tort law are sufficient to satisfy due process. *See Hudson*, 468 U.S. at 534-35; *see also, Browning v. City of Wedowee, Ala.*, 883 F. Supp. 618, 623 (M.D. Ala. 1995) (citing Ala. Code § 6-5-260 (1975)). Because adequate post-deprivation remedies were available to plaintiff, the alleged deprivation does not violate the Due Process Clause of the Fourteenth Amendment and plaintiff' claim against Defendant Tucker is due to be dismissed.

**F.     Fourteenth Amendment – Due Process & Equal Protection.**

To the extent plaintiff seeks to bring his medical claims under the Fourteenth Amendment's Due Process Clause, "[c]laims involving the mistreatment of . . .

pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). Since plaintiff is a convicted prisoner, his medical claims will be analyzed under the Eighth Amendment and his Fourteenth Amendment due process claims concerning the same are due to be dismissed.[2]

Plaintiff further claims that defendants have violated his Fourteenth Amendment right to equal protection by allegedly denying him adequate medical care. To allege a cognizable claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that he is similarly situated with other persons who were treated differently and that the reason for the differential treatment was based on some constitutionally protected interest such as race, religion, or national origin. *See Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001). Moreover, to establish an equal protection violation, a plaintiff must establish the existence of intentional or purposeful discrimination. *See Whitus v. Georgia*, 385 U.S. 545, 550 (1967).

---

[2] The applicable standard is the same for claims involving the mistreatment of pre-trial detainees and convicted prisoners whether brought under the Eighth or Fourteenth Amendments. *See Daniel v. U.S. Marshal Serv.*, 188 Fed. App'x 954, 961-62 (11th Cir. 2006); *see also Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005) (citing *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996)).

Plaintiff does not allege that he is similarly situated with other persons who were treated differently and that the reason for the differential treatment was based on some constitutionally impermissible basis. Therefore, plaintiff's Fourteenth Amendment equal protection claim is due to be dismissed for failing to state a claim upon which relief can be granted.

### G. Conspiracy.

Plaintiff alleges defendants conspired to violate his constitutional rights. "In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984). A complaint may justifiably be dismissed because of the conclusory, vague, or general nature of the allegations of conspiracy. *Id.* The "naked assertion" of a conspiracy without "supporting operative facts" is not sufficient to state a claim under § 1983. *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984). The plaintiff attempting to prove a § 1983 conspiracy must show that the parties "reached an understanding" to deny the plaintiff his or her rights. *Addickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). In other words, plaintiff must show some evidence of an agreement between the defendants. *Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir. 1992).

Plaintiff does not allege supporting operative facts that defendants conspired to deprive him of his constitutional rights. Specifically, plaintiff fails to show how these individuals "reached an understanding" to have his constitutional rights violated and he has made only conclusory statements that a conspiracy among them existed. *Addickes*, 398 U.S. at 152. Therefore, plaintiff's conspiracy claims are due to be dismissed.

### H.  ADA Claims.

Plaintiff alleges generally that defendants have violated the Americans with Disabilities Act. Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

A plaintiff qualifies as disabled under the ADA if he has "(A) a physical or mental impairment that substantially limits one or more of the major life activities . . .; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities are defined as "functions such as caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading,

concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482-83 (1999). The ADA requires those claiming protection "to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002) (quotations omitted).

In the present case, plaintiff has not alleged that he suffers from a disability. While plaintiff complains that he suffers from diabetes and high blood pressure, he does not set forth any facts in his complaint that these conditions substantially limit any of his major life activities. Even if plaintiff's medical conditions do rise to the level of a disability, plaintiff does not claim that he was subjected to unlawful discrimination by defendants as a result of the disability. More specifically, plaintiff does not allege any facts to show that defendants made a decision to exclude him from any services, programs, or activities for which he was qualified *because* he is disabled. Therefore, plaintiff's ADA claim against defendants is due to be dismissed for failing to state claim upon which relief may be granted.

**I.      Eighth Amendment – Medical Claims.**

To the extent plaintiff alleges that Dr. Pavlakovic, Nurses Wheat, Webb, Phillips, Shankle, Butler, Boatwright, Battle, Kleener, and Russell, and Officers Sanders, McDowell, Heflin, Zuspan, Massey, Bell, Marcano, and Hamer denied him medical care and/or retaliated against him for filing grievances and complaints, these claims should be referred to the undersigned for further proceedings. Plaintiff has alleged sufficient facts to require a Special Report from these defendants concerning these claims.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Accordingly, for the reasons stated above, the magistrate judge RECOMMENDS that the following claims be DISMISSED for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1):

1.      Plaintiff's claims against the Alabama Department of Corrections and St. Clair Correctional Facility;

2.      Plaintiff's claims against defendants in their official capacities for monetary relief;

3.      Plaintiff's claims against Nurses Marcano and Henry and Correctional Officer Cornelison;

4.      Plaintiff's Eighth Amendment medical care claims against Corizon, Inc.;

    5.    Plaintiff's Fourteenth Amendment due process claim against Lisa Tucker;

    6.    Plaintiff's Fourteenth Amendment due process and equal protections claims;

    7.    Plaintiff's conspiracy claims; and

    8.    Plaintiff's ADA claims.

The magistrate judge further RECOMMENDS that plaintiff's Eighth Amendment medical care and/or his retaliation claims against Dr. Pavlakovic, Nurses Wheat, Webb, Phillips, Shankle, Butler, Boatwright, Battle, Kleener, and Russell and Officers Sanders, McDowell, Heflin, Zuspan, Massey, Bell, Marcano, and Hamer be referred to the undersigned magistrate judge for further proceedings.

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court.  **Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.**  Failure to do so will bar any later challenge or review of the factual findings **or legal conclusions** of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en*

*banc*).  In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is DIRECTED to serve a copy of this report and recommendation upon the plaintiff.

DATED this 8th day of November, 2013.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE